UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| UNITED STATES OF AMERICA, | : | Case No. 1:25-cr-125 |
| | : | |
| Plaintiff, | : | Judge Douglas R. Cole |
| | : | |
| v. | : | Magistrate Judge Stephanie K. Bowman |
| | : | |
| YAN LIN, | : | |
| | : | |
| Defendant. | : | |

## DETENTION MOTION

COMES NOW the United States and moves for the detention of the Defendant Yan LIN ("LIN") pending trial. The United States respectfully submits that LIN poses an irremediable risk of flight and a danger to the community. There is no condition or combination of conditions that will reasonably assure LIN's appearance as required and the safety of other persons and the community. The United States requests Lin remain in custody pending trial.

### I. LEGAL STANDARD

Section 3142 of Title 18 of the United States Code provides the framework for determining whether a defendant should be released or detained pending trial. 18 U.S.C. § 3142. The default position "is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). "[A] defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* (quoting 18 U.S.C. § 3142(e)). A finding of dangerousness must be supported by clear and convincing evidence. *Id.*; *see also United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). The Government must prove a

risk of non-appearance by a preponderance of the evidence. *Id.*; *United States v. Curry*, 2006 U.S. Dist. LEXIS 49661 *1, *16 (E.D. Ky. 2006).

In determining whether the Government has met its burden of persuasion, the Court must consider the factors set forth in 18 U.S.C. § 3142(g). They are:

(1) the nature and circumstances of the offense charged . . .;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . .

This analysis "shall not be construed to modify or limit the presumption of innocence." *Stone*, 608 F.3d at 946; 18 U.S.C. § 3142(j).

**II.    ANALYSIS**

**A. Nature and Circumstances of the Offense**

First, the nature and circumstances of the offense weigh in favor of the detention of LIN. The indictment in this case stems from a long-term, multi-agency investigation into a sprawling professional money laundering organization. The investigation revealed that Mexico-based drug trafficking organizations, such as the Sinaloa Cartel, hired LIN to arrange for the pick-up of bulk cash from the sale of fentanyl, cocaine, and methamphetamine in numerous U.S. cities, such as Cincinnati, Ohio; Tulsa Oklahoma; Atlanta, Georgia; and Philadelphia, Pennsylvania. Through a complex, trade-based money laundering scheme, LIN and his co-conspirators, including China-

based electronic purchasers, arranged for the delivery of the bulk cash drug proceeds to individuals who used the bulk cash to purchase electronic goods, such as cellular telephones, tablets, and laptops, which were then shipped to Lin's co-conspirators, including those located in Hong Kong, China.

For identification and confirmation purposes, different parties involved in the money laundering scheme used a "token," which is the serial number on a U.S. dollar bill, for each transaction. Once the bulk cash drug proceeds were delivered in the United States, the Mexico-based drug traffickers would receive confirmation in the form of a photograph of the token and pick up payment in either pesos or dollars in Mexico minus the money broker's commission.

LIN's charges are based on his central role as a prolific money broker acting on behalf of Mexican drug trafficking organizations. One ledger, which recorded a portion of LIN's money laundering contracts, totaled approximately $27.4 million in bulk cash delivered across the United States. This ledger contained columns for the date of the money pick-up, the token used for that transaction, the U.S. city where the drug proceeds would be delivered, the amount of the illicit fund, as well as the amount charged for picking up the bulk cash (i.e. the commission rate). Just in the Southern District of Ohio alone, LIN arranged over forty money pick-ups, totaling approximately $3.8 million.

The severity of potential punishment is recognized as a defendant's incentive to flee. *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (noting the "defendant faces up to 20 years in prison and … Such significant penalties provide a strong incentive to flee."). Here, LIN is a facing a lengthy prison sentence—a maximum sentence of twenty years in prison on each of the five § 1956 charges.[1] His incentive to flee—which LIN is

---

[1] Based on the amount of money laundered by LIN and other applicable sentence enhancements (such as U.S.S.G. § 2S1.1(b)(1), for knowing or believing the laundered funds were from the

capable of doing and has done before as discussed in more detail below—is powerful.

Moreover, the nature and circumstances of LIN's charged crimes indicate that LIN has significant international connections that could assist in his flight, such as his drug trafficking customers in Mexico, the country where he operated from in 2022 to 2024, and his co-conspirators based in China, where LIN was originally from. These connections have substantial financial resources at their disposal, much of it in the form of untraceable cash and cryptocurrency that is beyond the reach of U.S. law enforcement.

### B. Weight of the Evidence Against the Defendant

The United States has overwhelming evidence of LIN's guilt of the charged offenses providing a considerable incentive to flee. This Court weighs the evidence against him "in determining whether there are conditions which will assure the appearance of the accused and safety of the community." *Hazime*, 762 F.2d at 37; 18 U.S.C. § 3142(g)(2); *see also United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (*per curiam*) (where "the evidence against defendants is strong, the incentive for relocation is increased"). By way of example, the government's evidence at trial against Yan Lin includes, but not limited to: (1) numerous communications between LIN and his Mexican co-conspirators, such as text messages, where LIN received money contracts; (2) numerous communications in which LIN directed bulk cash pick-ups and the purchase of cell phones; (3) testimony from multiple cooperating defendants, including Mexican DTO members, who used LIN's services to launder drug proceeds; (4) bulk cash and narcotic seizures; (5) shipping records of electronic goods sent by LIN's co-conspirators to Hong Kong-based entities; and (6) physical and electronic surveillances of bulk cash pickups coordinated by LIN.

---

distribution of narcotics, and § 2S1.1(b)(3), engaging in sophisticated money laundering), LIN's likely advisory guideline range is 235-293 months of imprisonment.

The government's proof will establish beyond a reasonable doubt that LIN is central to the money laundering scheme that served Mexican drug cartels. For example, in late September 2024, Lin was asked to coordinate the pickup of $270,000 of illicit proceeds in Los Angeles. LIN asked his co-conspirators to break the contract into two because $270,000 was too much for one city. One of LIN's co-conspirators subsequently explained to LIN that it was difficult to find another city to fulfill that amount of money because the drug trafficking business was slowed down by "the War in Culiacán"; referring to the armed conflict between Los Chapitos and Los Mayitos, the two factions within the Sinaloa Cartel.

LIN was aware that he was dealing with illicit proceeds and he was diligent about evading law enforcement. In one message, LIN warned couriers "bro if you don't followed the rule, we cant still working with you, you making my guy and you more risky." In a separate communication, LIN told a courier that a money pick up needed to be rescheduled because the number of people in the area were making the transaction "unsafe" and LIN "didn't wanna making any trouble." In another message, emphasizing to his co-conspirators that transactions must occur quickly, LIN stated "[t]hose people have to understand this job is sensitive. Can't wait in once place for over 10 minutes because people watching us." He decried, "[b]rother please understand me[,] if we keep doing this I am going to get caught."

In light of the staggering amount of evidence against LIN, there is no condition or combination of conditions that could mitigate his incentive to flee prosecution.

### C. History and Characteristics of the Defendant

Third, LIN's history and characteristics weigh strongly in favor of detention. 18 U.S.C. § 3142(g)(3). While LIN is a Chinese national with U.S. citizenship, LIN fled to Mexico in March 2022 from southern California when he learned that he was under federal investigation for money

laundering in the Southern District of California. On October 14, 2024, LIN traveled from Mexico to the Dominican Republic and was expelled to Miami, Florida. LIN was arrested upon arrival in Miami pursuant to an indictment from the Southern District of California, in which LIN was charged for conspiracy to launder monetary instruments from a date unknown to May 24, 2021 in violation of 18 USC § 1956(h).[2] in case no. 23-CR-447-DMS-7. Lin subsequently pled guilty and received an eighteen-month sentence on July 9, 2025. He has remained in custody since.[3]

Notably, between March 2022 (when LIN fled the United States) and October 14, 2024 (when he was expelled into the United States), LIN, despite being a U.S. citizen, never set foot once into the United States. Instead, LIN traveled extensively from Mexico, to Asia, to Europe, and to South America, staying a few days at each country. In other words, LIN had substantial financial resources and considerable experience to evade U.S. law enforcement and presents a unmitigable flight risk.

After fleeing the United States in March 2022, LIN started using a number of different telephone numbers to compartmentalize the various tasks of his trade-based money laundering scheme with different co-conspirators. He used separate phone numbers to receive money contracts from his Mexico-based clients, to direct U.S.-based drug traffickers to deliver bulk cash, to instruct U.S.-based couriers to pick up bulk cash, and to coordinate with his Hong Kong-based co-conspirators who relied on Lin to source bulk cash for acquiring electronic goods. To further obfuscate his identity, LIN used a number of different female nicknames, "DiDi," "Maria,"

---

[2] Case No. 23-CR-447-DMS-7.
[3] The charges here are distinct. The conspiracy here begins after LIN fled for Mexico in March 2022, many month after the end date of the conspiracy charged in SDCA indictment. In addition, LIN's role evolved from that of a courier in the SDCA case, to a prolific money broker orchestrating numerous money pick-ups and drop-offs on behalf of Mexican cartels in this case.

6

"Vitoria," "Victoria," "Monica," and "Vivian," among others, to communicate with his co-conspirators.

As already discussed, LIN likely has substantial and untraceable financial resources in Mexico and other foreign locations. For the money laundering contracts, LIN typically charged a commission of four percent but often much higher. Based on the ledger totaling $27.4 million of LIN's money contracts alone, Lin collected more than $1 million in commissions.

For these reasons, LIN should be detained.

### D. Nature and Seriousness of the Danger to the Community

Fourth, the government submits that in addition to being a risk of flight, LIN poses a danger to the community based on the conduct charged. The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v.* Millan, 4 F.3d 1038, 1048 (2d Cir. 1993).

LIN laundered money for Mexican drug trafficking organizations. As explained above, the charged offense involves moving the profits from the sale of copious amounts of dangerous, potentially lethal drugs, across international borders. LIN poses grave danger to the community because he can enable the criminal conduct of Mexican cartels by accepting illicit funds, launder them through commerce, and payout the proceeds to sources of supply. Just as dealing controlled substances presents a danger to the community, laundering of tens of millions of dollars in drug proceeds allows drug traffickers to continue to operate on a devastating scale.

## III. CONCLUSION

The United States respectfully submits that LIN poses an irremediable risk of flight and he is a danger to the community. There is no condition or combination of conditions that will

reasonably assure LIN's appearance as required and the safety of other persons and the community.

The United States requests LIN remain in custody pending trial.

                        Respectfully submitted,

                        DOMINICK S. GERACE II
                        United States Attorney

                        *s/ David P. Dornette*
                        David P. Dornette (OH 0098903)
                        Assistant U.S. Attorney

                        MARGARET A. MOESER
                        Money Laundering, Narcotics & Forfeiture
                        Criminal Division

                        *s/ Elizabeth Rabe*
                        ELIZABETH RABE (NY 4698072)
                        MINGDA HANG (NY 5333430)
                        Trial Attorneys