**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                                  **Case No. 1:25-cr-125**

      **v.**

                                  **JUDGE DOUGLAS R. COLE**

**YAN LIN,**                            **Magistrate Judge Bowman**

        **Defendant.**

### OPINION AND ORDER

The indictment in this matter charges Defendant Yan Lin with one count of Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h), and four counts of Concealment Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (2). (Indictment, Doc. 3). The matter is currently before the Court because the Magistrate Judge ordered Lin detained pending trial. (Order of Det. Pending Trial, Doc. 15). More specifically, she found that Lin posed a significant flight risk, which could not be addressed by any condition or set of conditions surrounding his release. (*Id.* at #57). Lin now moves under 18 U.S.C. § 3145(b) to revoke the Magistrate Judge's detention order. (Doc. 23). For the reasons explained below, the Court concludes that Lin is properly detained under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., and so it **DENIES** Lin's Motion to Revoke the Magistrate Judge's Detention Order (Doc. 23).

## BACKGROUND

On November 20, 2025, a grand jury indicted Lin, "a Chinese national with U.S. citizenship," (Resp., Doc. 26, #134, 144), on one count of Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h), and four counts of Concealment Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (2), (Doc. 3). The government claims that Lin was "the central, key money broker in a large-scale trade-based money laundering scheme that laundered at least tens of millions of dollars of drug proceeds by converting bulk cash to electronic goods for sale in China." (Doc. 26, #135; *see* Doc. 3, #37–40; Tr. of Det. Hr'g, Doc. 22, #86–95). According to the government, "[d]uring that time, Lin lived primarily in Mexico but traveled to and operated from Thailand, Turkey, Ecuador, Panama, Cuba, and other places (based on IP addresses and flight records)." (Doc. 26, #139). He is said to have "used at least ten, and upwards of twenty, separate telephone numbers to conduct his money laundering scheme, as well as numerous different, mostly female, aliases." (*Id.*; *see* Doc. 22, #90–91).

Although there is some dispute about the matter, the government believes that "Lin fled to Mexico in March 2022 from southern California when he learned that he was under federal investigation for money laundering" in a separate criminal proceeding in the Southern District of California that was based on earlier alleged money-laundering activities. (Doc. 26, #144). From there, the government says, Lin traveled to the Dominican Republic, where he was "expelled to Miami, Florida." (*Id.*). Lin was then arrested in Florida on the Southern District of California indictment.

(*Id.*). Once in custody, he pleaded guilty, and, on July 9, 2025, received an eighteen-month sentence. (*Id.*).

It appears that Lin was scheduled to begin his term of supervised release on January 14, 2026, in the Southern District of California case, (Req. for Modifying Conditions or Term of Supervision & Order, *United States v. Moreno,* No. 3:23-cr-447 (S.D. Cal. Dec. 9, 2025), Doc. 320), but before his release he had his initial appearance before the Magistrate Judge in this matter on January 8, 2026, (1/8/26 Min. Entry). There, the government moved for detention. (Mot. for Pretrial Det., Doc. 11). The Magistrate Judge set the detention hearing for the next day, January 9, 2026. (1/8/26 Min. Entry). But, due to the limited availability of an interpreter, the Magistrate Judge continued the hearing until January 20, 2026. (1/9/26 Min. Entry). At that hearing, Lin pleaded not guilty and the Magistrate Judge ordered Lin detained pending trial. (1/20/26 Min. Entry; Doc. 15; Doc. 22).

Lin now moves to revoke the detention order. (Doc. 23). In support of that outcome, though, he offers something of a novel argument. Often, criminal defendants press, and district courts rule on, arguments that the factors enumerated in 18 U.S.C. § 3142(g) demonstrate that there are conditions of release that will both assure the defendant's appearance in court proceedings and protect the safety of others, in turn meaning that § 3142(e) requires release pending trial. *See, e.g., United States v. DeFoor*, No. 1:26-cr-1, 2026 WL 685543 (S.D. Ohio Mar. 11, 2026). But Lin does not take that tack here. Instead, he contends that the government did not demonstrate that the case "involves" any of the items identified in 18 U.S.C. § 3142(f), and that as

a result, his January 20, 2026, detention hearing and subsequent detention were unlawful. (Doc. 23, #113–26).

With the benefit of the government's Response (Doc. 26), the matter is ripe for review.

## LAW AND ANALYSIS

When a Magistrate Judge orders a defendant detained pending trial under § 3142(e) as a flight risk or danger to the community, and the defendant challenges that determination before the district court, the "district court reviews the magistrate judge's decision de novo." *United States v. Roberson*, No. 1:21-cr-127, 2022 WL 2980530, at *2 (S.D. Ohio July 28, 2022) (cleaned up) (collecting cases). As part of this review, the Court considers the entire record, including the Pretrial Services Report, the original detention hearing, all briefings filed in the matter, and any evidence the parties tender at the hearing. *United States v. Carter*, No. 1:20-cr-62-1, 2021 WL 687858, at *2 (S.D. Ohio Feb. 23, 2021).

A.     **To Detain Lin Under These Circumstances, the Government Must Demonstrate a Serious Risk of Flight by a Preponderance of the Evidence.**

As the Court has already suggested, instead of § 3142(e), Lin relies on § 3142(f)—a less frequently litigated portion of the pretrial detention framework. That § 3142(f) is less-litigated, however, does not mean that the legal premises of Lin's argument are unsupported. Lin cites an empirical report published by the University of Chicago Law School's Federal Criminal Justice Clinic titled *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis*. (Doc. 23,

#114). Nearly forty years ago, the Supreme Court, in upholding the Bail Reform Act of 1984, declared that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). And yet, the University of Chicago's report suggests that pretrial detention practice in the federal courts has not quite hewed to that norm. The baseline has instead allegedly shifted to a "norm" of pretrial detention instead of the limited "exception" that the framers of the Bail Reform Act and the *Salerno* Court envisioned. Alison Siegler et al., *Freedom Denied* 20 (2022), https://freedomdenied.law.uchicago.edu/report (the UChicago report).

The authors contend that shift has been facilitated in part by a pattern of courts and prosecutors straying from the requirements of 18 U.S.C. § 3142. Under that section, a criminal defendant may be "detained under subsection (e)." 18 U.S.C. § 3142(a)(4). And under subsection (e), a defendant may be detained if, "after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1).

Section 3142(f), in turn, states that "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c)" *only* in a case "that involves" one of the items enumerated in that section. Section 3142(f)(1) lists certain categories of offenses. *See id.* § 3142(f)(1)(A)–(E). And § 3142(f)(2), the provision at issue here, permits a hearing "upon motion of

the attorney for the Government or upon the judicial officer's own motion, in a case that involves" either (A) "a serious risk that [the defendant] will flee," or (B) "a serious risk that [the defendant] will obstruct or attempt to obstruct justice," or commit various other acts that tend to undermine the integrity of proceedings. *Id.* § 3142(f)(2)(A)–(B).

But the UChicago report contends that prosecutors often fail to "cite a valid statutory basis for detention" under either § 3142(f)(1) or (f)(2). Siegler, supra, at 94. As a result, courts sometimes hold detention hearings based on the government's assertion that the defendant is a "danger to the community" (in a sense that is not captured by the offenses listed in § 3142(f)(1)) or a mere "non-serious 'risk of flight'" (as opposed to the statutorily required and analytically distinct "serious risk" that the defendant will flee, *see* 18 U.S.C. § 3142(f)(2)(A))). Siegler, supra, at 94–95. And the UChicago report further contends that judges, frequently unaware of the distinct requirements of § 3142(f) because neither the defendant nor the government raises them, end up holding hearings and ordering detention even where, for example, it's a "non-(f)(1) case[]" and "prosecutors did not cite or present evidence of any § 3142(f)(2) factor to support their detention request." *Id.* at 99. Under those conditions—that is, when it's a non-(f)(1) case and there is no evidence for either (f)(2) factor—judges inadvertently "detain[] people illegally." *Id.*

According to Lin, this is one such case. He correctly observes that this is not a § 3142(f)(1) case—money laundering is not among the listed offenses. (Doc. 23, #115). And he says that the government has argued, and only presented evidence for, an

"*[o]rdinary* 'risk of flight,'" (*id.* (emphasis added)), rather than the "serious risk" of flight that 18 U.S.C. § 3142(f)(2)(A) requires.

Curiously, while the UChicago report describes what it contends is a widespread practice in the federal district courts that is not in keeping with the Bail Reform Act's requirements, several courts of appeals have long recognized that § 3142(f) imposes distinct procedural and evidentiary requirements. *See United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("In other words, § 3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the [seven circumstances listed (f)(1)(A), (f)(1)(B), (f)(1)(C), (f)(1)(D),[(f)(1)(E)], (f)(2)(A) and (f)(2)(b)]."); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (citations omitted) ("After a motion for detention has been filed, the district court must undertake a two-step inquiry …. It must first determine by a preponderance of the evidence … that the defendant has either been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice."); *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ("[T]he structure of the statute and its legislative history make it clear that Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists.").

The Sixth Circuit, for its part, has not provided any definitive guidance on this issue in a published opinion. But it has, in a table decision, reversed a district court's improper § 3142(f) determination. *See United States v. Hardon*, 149 F.3d 1185, 1998

WL 320945, at *1 (6th Cir. June 4, 1998) (Table) (holding that "possession of a firearm and ammunition by a convicted felon are [not] crimes of violence for the purposes of § 3142(f)(1)(A)"). Although the case is rather terse in its reasoning, the Court agrees with the Sixth Circuit that "[s]ection 3142(f) authorizes a detention hearing if one of the [seven] circumstances set forth in § 3142(f)(1)(A)–([E])[1] and (f)(2)(A)–(B) are met." *Id.* (citing *Byrd*, 969 F.2d at 109); *see United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007) (citation omitted) ("[A]n unpublished decision … is not precedentially binding … but is considered by [the Court] for its persuasive value only."). And in *Salerno*, the Supreme Court noted, at a few points, that § 3142(f) acts as a threshold screening mechanism, and then it relied on that mechanism in determining that the Bail Reform Act passes due process muster. *See* 481 U.S. at 747 (citing 18 U.S.C. § 3142(f)) ("The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes."); *id.* at 750 ("The Act operates *only* on individuals who have been arrested for a specific category of extremely serious offenses."). The weight of authority, then, suggests that the UChicago report has a point, at least as a matter of its argument regarding statutory interpretation.

As it turns out, Judge Richardson of the Middle District of Tennessee issued a decision that comprehensively explores the issue, one with which the Court largely agrees. *See United States v. White*, No. 3:21-mj-4070, 2021 WL 2155441 (M.D. Tenn.

---

[1] 18 U.S.C. § 3142(f)(1)(E) did not exist when the Sixth Circuit handed down *Hardon* in 1998. Congress added the provision to § 3142(f)(1) in the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 216, 120 Stat. 587, 617.

May 27, 2021). But the Court pauses to highlight a few propositions of law from *White* and similar decisions that inform the Court's analysis here.

*First*, § 3142(f) imposes an evidentiary burden on the government. Admittedly, the statute does not specify one. And so "[o]ne might be tempted to assume that the Government's invocation of Section 3142(f)(2)(A) is conclusive as to whether it is entitled to a detention hearing." *Id.* at *7. That is, one might assume that the government's assertion "that the case 'involves a serious risk of flight'" "is self-effectuating." *Id.* After all, "in common practice, if the Government files a motion for detention under 18 U.S.C. § 3142(f)(2)(A) based on alleged serious risk of flight, the Government gets its detention hearing, with no questions asked about the appropriateness of holding the detention hearing." *Id.* at *6. As it turns out, though, "it is not a safe assumption." *Id.* at *7. Rather, "the district [court] must *find*—and … it is not enough merely for the Government to claim—that the case involves a serious risk of flight." *Id.* (emphasis in original) (citing *Friedman*, 837 F.2d at 50 ("We also reject the government's claim that this case involved a serious risk that Friedman would obstruct justice as the *district court* has made no finding whatsoever on this issue." (emphasis added))). *White*, consistent with *Friedman* and other similar decisions, concluded that the proper quantum of proof is a preponderance of the evidence. *Id.* The Court agrees, as "this is the recognized standard for the Government on so many motions (or particular aspects of motions) in criminal cases." *Id.*; *see, e.g.*, *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (citing *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992)) (voluntariness of confession);

9

*United States v. Hoyt*, 200 F. Supp. 2d 790, 792 (N.D. Ohio 2002) (citation omitted) (competency to stand trial). Thus, detention on the government's motion under § 3142(f)(2)(A) requires the government to produce "evidence (or at least concrete information proffered by the Government)." *White*, 2021 WL 2155441, at *7 (emphasis omitted).

*Second*, the language "serious risk that such person will flee," 18 U.S.C. § 3142(f)(2)(A), is distinct from the mere risk of nonappearance that § 3142(e) addresses. There is, of course, a "relationship" between the two. *White*, 2021 WL 2155441, at *8. But the Court agrees with *White* that the former phrase refers to *intentional* conduct designed to avoid required court appearances, while the latter concept is best read as referring to "the risk of non-appearance generally." *Id*. Thus, for example, § 3142(e), but not § 3142(f)(2)(A), "would encompass the risk that a defendant released to reside before trial in a location relatively far from the jurisdiction would (for any number of reasons) *unintentionally* fail to make it back to the jurisdiction for proceedings." *Id*. at *11 (emphasis added).

*Third*, the Court may make its "serious flight risk" determination either before or after the detention hearing. Because a motion under § 3142(f)(2)(A) is "primarily a motion for a detention hearing," one might assume that the propriety of the hearing "must be established before the motion is granted and the hearing held." *Id*. Yet the "cases suggest that the showing can be made at the detention hearing itself." *Id*. As a practical matter, the Court cannot see how it could be otherwise. The government "should [not] be deprived of the opportunity to establish, at the detention hearing

10

itself, satisfaction of one of the two required steps for obtaining the detention order it seeks." *Id.* Thus, the Court may, with the benefit of the January 20, 2026, detention hearing, determine whether the government has carried its burden.

At bottom, though, the Court agrees with Lin's legal premise—to proceed with a detention hearing, the government ultimately must show that a given case falls within one of the seven categories delineated in 18 U.S.C. § 3142(f)(1) or (f)(2).

**B.    The Government Has Carried its Evidentiary Burden Under § 3142(f)(2)(A).**

Unfortunately for Lin, having agreed with him on the law, the Court rejects his factual premise—that the government has failed to carry its burden here. Admittedly, the record appears to disclose some confusion from both the government and the Magistrate Judge on the proper legal standard (which is understandable given that Lin has taken something of a novel approach here). The government's Motion for Pretrial Detention (Doc. 11) does not cite *any* provision of § 3142(f). Instead, the motion simply skips to the second step in the analysis—consideration of the factors enumerated in § 3142(g). (*See* Doc. 11, #29–34). And the Magistrate Judge's Order of Detention wrongly indicates that Lin is detained under § 3142(f)(1). (Doc. 15, #56). All agree that the charged crimes here do not fall within any of the (f)(1) categories, and consistent with the detention hearing, the parties are generally focused on Lin's risk of flight. (*See generally* Doc. 22).

Despite any missteps that may have occurred along the way, though, the Court concludes that the government has carried its burden under § 3142(f). Although the Motion for Detention does not cite § 3142(f)(2)(A)'s language about a flight risk, it

11

asserts that Lin poses "an irremediable risk of flight"—a subset of the "serious" risks of flight set forth in the statutory text.[2] (Doc. 11, #28). Thus, Lin had notice that the government intended to argue Lin's risk of flight as a basis for detention at the detention hearing. And the Court concludes that the government's representations at the detention hearing on that front were sufficient to bring the matter within the scope of § 3142(f)(2)(A). Specifically, the government indicated that Lin fled to Mexico after learning about a federal money laundering investigation in March 2022. (Doc. 22, #93). During that time, he spent two-and-a-half years traveling to several other locations—including Asia, Europe, and South America—without stepping foot in the United States. (*Id.*). In doing so, he leveraged "enormous financial resources and [an] extensive network of foreign and abroad co-conspirators." (*Id.*). After being "expelled to the United States" from the Dominican Republic, he pleaded guilty in the Southern District of California to money laundering. (*Id.* at #93–94). And now, he faces greater sentencing exposure on similar charges here in the Southern District of Ohio. (*Id.* at #94).

True, at the detention hearing, Lin argued that "the government has provided absolutely no evidence to show that Mr. Lin traveled out of the country with knowledge that the government was investigating him when he left for Mexico." (*Id.* at #101). And, according to Lin's former counsel, the record in the California proceedings is devoid of any indication that Lin went to Mexico with the specific

---

[2] Although the government's Response ultimately fails to engage with the issue that the Court has described, the Response does acknowledge that the only appropriate basis for its Motion for Detention was § 3142(f)(2)(A) and that the Magistrate Judge appears to have erred when she indicated that the motion was brought under § 3142(f)(1). (Doc. 26, #135 n.1).

12

intent of evading arrest. (*See id.* at #102). Lin's instant motion offers similar arguments. (*See* Doc. 23, #119–24). And in that sense, this case bears yet another resemblance to *White*, a case in which the court determined that the government *failed* to carry its burden under (f)(2) despite, (1) an allegation that the defendant evaded arrest in a separate proceeding in Galena, Texas; (2) a lack of community ties to the district in question; (3) a prior failure to appear on a minor state charge; and (4) an allegedly poor record of compliance with conditions of pretrial release. 2021 WL 2155441, at *13–14. So *White* arguably supports a finding that the government failed to make the necessary showing.

But here, various considerations cut the other way as well. First, while the record may contain no affirmative evidence regarding Lin's intent at the time he left the United States for Mexico, the simple fact is that the chronology of events is probative on that issue. As the Court understands it, Lin—a Chinese national who renounced his Chinese citizenship for American citizenship—went to Mexico at around the time the government was investigating him for offenses similar to those charged here. (Doc. 22, #93–94, 97). Sure, it is possible that Lin simply went to Mexico to live with his girlfriend, as Lin's former counsel argued at the detention hearing. (*Id.* at #102). But that doesn't explain why he then spent two-and-a-half years out of his adopted home travelling to various other destinations and only returned to the United States under formal compulsion. (*See id.* at #93–94).

Second, the government correctly points out that Lin appears to have the means to evade arrest if he were to elect that course. After Lin left the United States,

13

the government says that "he was using at least 12 different aliases and at least 20-plus different phones in furtherance of a massive, sprawling money laundering conspiracy." (*Id.* at #104–05). Moreover, it appears that Lin has some $50,000 in immediately available assets, which could facilitate his flight. (*Id.* at #110).

Finally, the government has represented that it brought the charges that it did for the specific purpose of ensuring that Lin "did not have the opportunity to do exactly what he has done in the past, which is flee the country and evade arrest for multiple years." (*Id.* at #105). Against that backdrop, the Court's conclusion is essentially the same as the Magistrate Judge's:

> Mr. Lin, I do still have concerns that you are a flight risk. The government's allegations that they have evidence that you used multiple aliases is concerning to me. I understand there's a dispute on whether or not you knowingly fled prosecution in California. Even setting that aside, I still have concerns about your risk of flight. You do not have any ties to the Southern District of Ohio. You have family in China. You have a girlfriend in Mexico; a brother in Texas; which … is a border state. And the fact that you traveled extensively around the world causes me concern that you can be a risk of flight.
>
> It also indicates in the Pretrial Services report that you have the financial means in which to do so. We didn't talk about it, but it's indicated that in here that you thought you had $50,000 in the bank.

(*Id.* at #109–10).

In short, it appears to the Court that Lin has the incentive, know-how, financial means, and—potentially, but not certainly—first-hand experience evading arrest on similar charges. For these reasons, the Court concludes the government has met its burden to show by a preponderance of the evidence that Lin presents a serious risk of flight, such that this case falls within § 3142(f)(2)(A). As a result, the Court rejects Lin's principal argument for revoking the Magistrate Judge's detention order.

14

**C.     There is No Condition or Combination of Conditions that Will Reasonably Assure Lin's Appearance.**

With the § 3142(f) question settled, the Court proceeds to the second step: whether there is any condition or combination of conditions that "will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e)(1). As above, the government bears the burden of proof on this issue, and it must show "risk of [nonappearance] by a preponderance of the evidence." *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *2 (6th Cir. Mar. 18, 2020) (quoting *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004)). When evaluating whether detention is appropriate, the Court considers (1) "the nature and circumstances of the offense"; (2) "the weight of the evidence against the defendant"; (3) "the history and characteristics of the defendant"; and (4) "the nature and seriousness of the danger to any person of the community that would be posed by the defendant's release." *United States v. Parish*, No. 1:21-cr-127-14, 2022 WL 3654892, at *4 (S.D. Ohio Aug. 25, 2022) (citation omitted) (cleaned up); *see* 18 U.S.C. § 3142(g).

Lin's remarks on this issue take up only a paragraph in his brief and do not even engage with, let alone cite, the pertinent legal standard. (*See* Doc. 23, #127). But, as the Court's review is de novo, it will nonetheless consider the § 3142(g) factors.

First, as to the "nature and circumstance of the offense charged," 18 U.S.C. § 3142(g)(1), Lin is alleged to have played a "central role as a prolific money broker acting on behalf of Mexican drug trafficking organizations," (Doc. 11, #30). The charges and sentencing exposure based on that alleged conduct are potentially significant. Lin faces "a maximum sentence of twenty years in prison on each of the

15

five § 1956 charges." (Doc. 26, #140). And "[s]uch significant penalties provide a strong incentive to flee." *Shuklin*, 2020 WL 2992522, at *1. So this first factor favors detention.

Second, "the weight of the evidence" against Lin appears to be strong. 18 U.S.C. § 3142(g)(2). As the Sixth Circuit has explained, this consideration "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community," *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985), "not the weight of the evidence of the defendant's guilt," *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (citations omitted). For the reasons already explained, *see* supra Law & Analysis, Part B, the weight of the evidence, as the Court reads it, strongly suggests that Lin has the incentive, means, and perhaps the know-how to evade arrest for a significant period of time. That cuts in favor of detention.

Third, "the history and characteristics of the person," 18 U.S.C. § 3142(g)(3), favor detention for the same reasons that the second factor favors detention.

And fourth, the final factor, "the nature and seriousness of the danger to any person or the community," *Id.* § 3142(g)(4), has limited bearing here since Lin's detention turns on his risk of flight rather than any alleged danger he poses to the community, *see, e.g.*, *United States v. Adams*, No. 3:22-cr-117, 2023 WL 1093887, at *5 (E.D. Tenn. Jan. 10, 2023) (quoting *United States v. Xiaorong You*, No. 2:19-cr-14, 2019 WL 2426659, at *6 (E.D. Tenn. June 10, 2019) ("This factor has minimal value when the defendant poses a serious risk of flight, as opposed to a danger to the

16

community, particularly when there is no allegation that the defendant engaged in violence or that she poses any risk of physical danger to another person or the community." (cleaned up))).

The Court notes that the result of the analysis at the second step is unsurprising in light of its earlier conclusion at the first step. Under these circumstances—where the government succeeds in demonstrating by a preponderance of the evidence that the defendant is a flight risk—the § 3142(g) analysis will be informed (although not controlled) by the court's conclusion under § 3142(f)(2)(A). *See White*, 2021 WL 2155441, at *10 ("[I]n many cases the distinction would have proven to be one without a difference anyway. Even Defendant in this case, who has taken the unusual (in the undersigned's experience) and appropriate tack of relying on [the distinction between § 3142(e) and § 3142(f)], claims that ultimately it makes no difference here because (according to Defendant) he would prevail at step two anyway."); *United States v. Khatiwada*, No. 3:24-mj-1277, 2024 WL 4906487, at *7–10 (M.D. Tenn Nov. 27, 2024) (holding that a criminal defendant prevailed under the § 3142(g) factors due to extensive community and family ties despite being deemed a serious flight risk for purposes of § 3142(f)(2)(A)).

## CONCLUSION

For the reasons explained above, the Court **DENIES** Lin's Motion to Revoke the Magistrate Judge's Detention Order (Doc. 23).

**SO ORDERED.**


May 5, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**