**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | **Case No. 1:25-CR-125** |
| Plaintiff, | * | **Judge Matthew R. Byrne** |
| v. | * | |
| **YAN LIN,** | * | |
| Defendant. | * | |

## OPINION AND ORDER

This matter is before the Court on Defendant Yan Lin's motion to dismiss the indictment on double jeopardy grounds.[1] (Doc. 30.) The motion to dismiss has been fully briefed and is now ripe for the Court's review. (Docs. 30 and 32.) For the reasons set forth herein, the motion to dismiss (Doc. 30) is **DENIED.**

## I. BACKGROUND

The Government has prosecuted Lin twice for conspiring to commit money laundering. The first prosecution occurred in the Southern District of California.[2] The second is now proceeding in the Southern District of Ohio.

[1] Lin captioned the motion to dismiss as "Motion to Dismiss the Indictment for Violation of Defendant's Double Jeopardy Rights Through Successive Prosecution." (Doc. 30.)

[2] Lin's SDCA prosecution occurred in *United States v. Moreno, et al.*, United States District Court for the Southern District of California, Case No. 23-cr-0447-DMS-7. We take judicial notice of the docket in that case. *See* Fed. R. Civ. P. 201(b) ("[A] court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004) (a federal court may take judicial notice of "court records . . . available online to members of the public"); *Walker v. Ohio*, 2026 U.S. Dist. LEXIS 261873, *2 n.2 (S.D. Ohio Oct. 8, 2026); *Landt v. Farley*, 2022 U.S. Dist. LEXIS 138157, *1 n.2 (N.D. Ohio Sept. 26, 2012) (showing a federal district court taking judicial notice of judicial records available on PACER). Because the Government included copies of relevant Southern District of California filings as exhibits attached to its response to the motion to dismiss, we cite to those exhibits below.

### A. Southern District of California Indictment and Proceedings

In March 2023, a grand jury in the Southern District of California ("SDCA") indicted Lin and seven other co-conspirators, charging them with drug trafficking and money laundering. (Response, Doc. 32, Exhibit A, PageID 224–29.) Lin was charged only with Count Five of the SDCA Indictment, Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h). (*Id.*) Prior to the SDCA Indictment, in March of 2022, Lin fled to Mexico. (Motion to Dismiss, Doc. 30, Page ID 191; Response, Doc. 32, PageID 202.) A few years later, Lin traveled from Mexico to the Dominican Republic, where he was eventually extradited to Miami, Florida. (*Id.*) Upon his arrival in Miami, agents arrested Lin pursuant to the SDCA Indictment. (*Id.*)

In April 2025, Lin pleaded guilty to the SDCA Indictment. (Response, Doc. 32, Exhibit B, PageID 230–45.) In his plea agreement, he conceded that from a "date unknown and continuing up to and including May 24, 2021, within the Southern District of California" "there was an agreement between . . . Lin and others to launder monetary instruments that represented proceeds of unlawful activity." (*Id.* at 234.) Specifically, Lin admitted that on multiple occasions between March and May of 2021, he and a co-conspirator met "in parking lots to pick up deliveries of bulk cash" from another co-conspirator. (*Id.* at 234) Lin also admitted that, after picking up the drug money, he "intended to arrange for the funds to be transmitted to co-conspirators in Mexico." (*Id.*) Lin also "intended to conduct transactions to conceal the source and ownership of the funds and to transmit the funds to Mexico in a manner that avoided the reporting requirements for exporting bulk currency." (*Id.*) On May 21, 2021, Lin met with a co-conspirator at an apartment complex in the Southern District of California, where the co-conspirator gave Lin a backpack containing $200,000 in cash. (*Id.*) Lin subsequently took

the backpack and drove away, intending to arrange for the funds to be transmitted to co-conspirators in Mexico. (*Id.*)

Lin pleaded guilty to Count Five of the SDCA Indictment. (Response, Doc. 32, Exhibit B, PageID 230–45.) He was then sentenced to 18 months imprisonment. (Response, Doc. 32, Exhibit C, PageID 246–47.)

### B. Southern District of Ohio Indictment

In November 2025, seven months after Lin's conviction in the SDCA case, a grand jury in the Southern District of Ohio ("SDOH") returned an indictment charging Lin with (1) conspiracy to launder money in violation of 18 U.S.C. § 1956(h), and (2) four counts of concealment of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (2). (SDOH Indictment, Doc. 3, Page ID 37–44.)

Count One of the SDOH Indictment concerns the conspiracy to launder money charge. Count One alleges that "[f]rom on or about March 19, 2022, and continuing through at least on or about October 12, 2024 . . . in the Southern District of Ohio and elsewhere" Lin conspired to "knowingly conduct financial transactions" that "involved the proceeds of . . . narcotics trafficking . . . knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity" and "knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, and ownership, and the control of the proceeds of such . . . unlawful activity." (SDOH Indictment, Doc. 3, PageID 40.) The SDOH Indictment also alleges that Lin "was a money broker who operated in Mexico and other places" where he and his co-conspirators would "arrange for the pickups of bulk cash from the sale of fentanyl, cocaine, and methamphetamine in . . . Cincinnati, Ohio; Tulsa, Oklahoma; Atlanta, Georgia; Philadelphia, Pennsylvania; and elsewhere." (*Id.* at 39.) The

Mexico-based drug-organizations would provide "Lin's contact information to their U.S.-based operatives, who would then contact . . . Lin to further arrange the pickups of bulk cash drug proceeds." (*Id.*)

According to the SDOH Indictment, after the delivery of the cash as directed by Lin, some of "the drug proceeds would be delivered to other individuals who would use the bulk cash to purchase electronic goods" which were then shipped to "Lin's co-conspirators including those located in Hong Kong, China." (*Id.*) The SDOH indictment described this method of money laundering as "trade-based money laundering." (*Id.* at 38–39.) Likewise, at the direction of Lin and his co-conspirators, some of the other "bulk cash drug proceeds were delivered in public places such as parking lots near shopping malls and restaurants." (*Id.* at 39.) Once the bulk proceeds were delivered in the United States at "Lin's instructions, a member of [a] Mexico-based [drug trafficking organization] would receive confirmation from their U.S.-based operatives in the form of photographs of U.S. dollar bills." (*Id.* at 40.) "They would then use these photographs of U.S. dollar bills to receive payment in either pesos or dollars equivalent to the amount of bulk cash drug proceeds that were delivered in the United States[.]" (SDOH Indictment, Doc. 3, PageID 40.) The SDOH Indictment alleges that "[o]ne ledger, which recorded only a portion of . . . Lin's money contracts in 2024, totaled approximately $27.4 million in bulk cash delivered across the United States." (*Id.*)

Counts 2–5 of the SDOH Indictment involve four separate counts of concealment of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (2). (SDOH Indictment, Doc. 3, PageID 41–43.) Count 2 involves the amount of $119,570 and occurred "on or about December 1, 2022, and continu[ed] through on or about December 2, 2022," in the SDOH and "elsewhere." (*Id.* at 41.) Count 3 involves the amount of

$149,700 and occurred sometime "on or about December 2, 2022, and continu[ed] through on or about December 8, 2022," in the SDOH and "elsewhere." (*Id.* at 41–42.) Count 4 involved $49,860 and occurred sometime "on or about March 1, 2023, and continu[ed] through or about March 18, 2023," in the SDOH and "elsewhere." (*Id.* at 42.) Count 5 involved $49,980 and occurred sometime "on or about July 22, 2023, and continue[d] through on or about July 24, 2023" in the SDOH and "elsewhere." (*Id.* at 43.)

## II. LAW & ANALYSIS

Now, Lin argues that his prior federal conviction in the SDCA for conspiracy to launder monetary instruments precludes his current prosecution in the SDOH because "the prosecution's filing of these successive related charges violates Double Jeopardy." (Motion to Dismiss, Doc. 30, PageID 193.) The Court disagrees, as the two conspiracies and offenses are not the same for purposes of Double Jeopardy.

The Fifth Amendment provides that no person "shall be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This "double jeopardy" clause protects individuals from multiple punishments or prosecutions for the same offense. *United States v. Theunick*, 651 F.3d 578, 587 (6th Cir. 2011) (citing *United States v. DeCarlo*, 434 F.3d 447, 454 (6th Cir. 2006)). Generally, courts apply the "same evidence" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether two offenses are the same for double jeopardy purposes. Under *Blockburger*'s "same evidence" test, the Government may prosecute someone for two separate crimes if each offense "requires proof of a fact which the other does not." *Id.*

But the United States Court of Appeals for the Sixth Circuit, along with its sister circuits, has consistently held that the *Blockburger* test is inadequate to protect the rights of defendants in conspiracy cases. *United States v. Jabara*, 644 F.2d 574, 577 (6th Cir.

1981); *see also United States v. Tercero*, 580 F.2d 312 (8th Cir. 1978). "That is because in conspiracy cases the government could point to different overt acts in the same conspiracy and mischievously transform what should be one prosecution into two." *United States v. Kennedy*, 2016 WL 4443465 at *1 (E.D. Ky. Aug. 15, 2016) (citing *Jabara*, 644 F.2d at 576). Therefore, the Sixth Circuit uses a "totality of circumstances" test to determine whether there was more than one conspiracy. *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983).

"In a conspiracy case it is the agreement which forms the nucleus of the offense." *Sinito*, 723 F.2d at 1256. Thus, the "ultimate question is whether the evidence shows one agreement or more than one agreement." *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380 (6th Cir. 1886). If there are two separate agreements, then there are two conspiracies. *Id.*

To determine whether there was more than one agreement, a court must consider five factors: (1) time; (2) the persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the conspiracy; and (5) the places where the events took place as a part of the conspiracy. *Sinito*, 723 F.2d at 1256. The Sixth Circuit gives the greatest weight to the fourth factor, the nature and scope of the overt act. *United States v. Wheeler*, 535 F.3d 446, 454 (6th Cir. 2008). If several factors differ, the conspiracies are separate crimes and prosecuting a defendant for both conspiracies does not violate a defendant's Fifth Amendment rights. *United States v. Meda*, 812 F.3d 502, 508 (6th Cir. 2015).

Initially, the burden is on the defendant to make a non-frivolous double jeopardy claim. *See Jabara*, 644 F.2d at 576-77. To do so, Lin must allege that the double jeopardy

claim is at least "colorable." *United States v. Pi*, 174 F.3d 745, 747-49 (6th Cir. 1999) (explaining that this low bar exists to weed out frivolous claims that are really attempts to circumvent the final judgment rule). Here, Lin asserts that both conspiracies contain the same overt act. (Motion to Dismiss, Doc. 30, PageID 195.) Because Lin's claim is at least colorable, he has cleared the low bar for his initial burden.

The burden now shifts to the Government to show two separate conspiracies. *See Jabara*, 644 F.2d at 576-77. Thus, the question is whether the Government has shown—by a preponderance of the evidence—that at least a few of the five *Sinito* factors indicate that there were two separate agreements, two conspiracies, and therefore two crimes. *Id.*

### A. *Sinito* Factors – SDCA Count 5 and SDOH Count 1

Beginning with the first *Sinito* factor—time—the SDCA conspiracy and the SDOH conspiracy covered materially distinct time periods. The SDCA conspiracy covered a time prior to and including May 24, 2021, while the SDOH conspiracy occurred from "on or about March 19, 2022" to at least "October 12, 2024." (Response, Doc. 32, Exhibit A, PageID 226; SDOH Indictment, Doc. 3, PageID 40.) Lin concedes that the timeframes in the two indictments are different but argues that the "allegations and evidence were discovered at the same time" and that "these prosecutions were put in place to carve up a single conspiracy." (Motion to Dismiss, Doc. 30, PageID 195.) Lin, however, fails to cite the factual record or any legal authority in support of his argument. (*Id.*) Because the two conspiracies occurred at different times, the first *Sinito* factor weights in favor of Government.

The second factor looks to who the co-conspirators were in the respective indictments. The SDCA Indictment charged Lin and seven other co-conspirators, who were narcotics traffickers in California. (Response, Doc. 32, Exhibit A, PageID 224–29.)

The SDOH Indictment describes several groups of individuals who were involved in the alleged money laundering conspiracy: Mexican drug traffickers; U.S.-based drug traffickers involved in trafficking in Cincinnati, Ohio, and Dayton, Ohio; U.S.-based purchasers of electronics who used drug proceeds to purchase electronics; and China-based electronic resellers. (SDOH Indictment, Doc. 3, PageID 38–39.) None of these individuals were charged in the SDOH Indictment; only Lin was charged. (*Id.* at 37.) Other than Lin, none of the individuals alleged to be involved in the SDOH conspiracy were involved in the SDCA conspiracy. These differences weigh in favor of finding that two conspiracies existed. *See Wheeler*, 535 F.3d at 457; *United States v. Toaz*, 59 F. App'x 94, 101 (6th Cir. 2003) (holding that this factor favored the government because the defendant was "the only conspirator . . . mentioned in both indictments.") Lin concedes that "no other conspirators overlap" but argues that "the money laundering conspiracy charged in California would have allegedly been part of the whole conspiracy the government is deciding to prosecute[.]" (Motion to Dismiss, Doc. 30, PageID 195.) Again, Lin does not provide any evidence or cite to any legal authority in support of his argument. (*Id.*)

The third factor is the statutory offense charged. Both indictments charge Lin with Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). The fact that the two indictments share a statutory offense favors Lin. Although this factor weighs in favor of Lin, it "'is a minor point, since one can certainly enter two conspiracies to commit the same type of crime.'" *Wheeler*, 535 F.3d at 456 (quoting *United States v. Ledon*, 49 F.3d 457, 460 (8th Cir. 1995)); *see also Meda*, 812 F.3d at 509–10 (holding that a combination of time, co-conspirators, and overt acts showed that there were two conspiracies, even where the charges and geography were the same).

The fourth factor, the overt act and nature of the conspiracy, is often called the "'most significant factor.'" *United States v. Kennedy*, 743 F. App'x 649, 653 (6th Cir. 2018) (quoting *Wheeler*, 535 F.3d at 450.) The SDCA Indictment charged Lin with being a courier who picked up bulk cash proceeds in California parking lots and intending to conceal and arrange for the funds to be transmitted directly to co-conspirators in Mexico.[3] (Response, Doc. 32, Exhibit A, PageID 226; Response, Doc. 32, Exhibit B, PageID 234.) The SDOH Indictment, on the other hand, charges Lin with a higher-level role in a more complicated, broader-ranging money laundering scheme. (SDOH Indictment, Doc. 3, PageID 37–41.)

Specifically, the SDOH Indictment charges Lin with being a "professional money launderer" in a complex money laundering scheme that covered multiple states, cities, and territories. (*Id.*) The SDOH Indictment alleges that he was a "money broker" for Mexican drug trafficking organizations. (*Id.* at 39). According to the SDOH Indictment, while Lin operated in Mexico and elsewhere, Mexican drug traffickers would provide Lin's contact information to U.S.-based operatives, who would contact Lin. (*Id.* at 39–40). Lin would then arrange for the delivery of drug proceeds to *other* individuals in multiple states; those individuals would then use the bulk cash to purchase electronics goods which were then shipped to co-conspirators in Hong Kong, China, and elsewhere. (*Id.*) Lin arranged for "mirror transactions," minus a broker fee paid to Lin. (*Id.*) Lin used aliases in furtherance of these transactions that he did not use in the separate, earlier California transactions. (*Id.*)

---

[3] The SDCA case included evidence of one planned pickup in Ohio.

Thus, while the allegations in the SDCA Indictment and the SDOH Indictment both concern Lin's involvement in drug-related money laundering conspiracies, the similarities end there. The SDCA conspiracy and the alleged SDOH conspiracy are factually distinct with respect to Lin's role, Lin's level of involvement and responsibility, Lin's specific actions, the parties involved, the specific mechanisms used to launder money, and the different roles played by Lin's co-conspirators to effectuate these money laundering schemes. Therefore, the fourth factor weighs in favor of the Government. *See Kennedy*, 743 Fed. App'x. at 653 (finding two conspiracies were not the same when the second conspiracy was more "far more expansive in scope"); (SDOH Indictment, Doc. 3, PageID 37–41.)

The fifth factor is the place where the conspiracy occurred. The SDCA Indictment focused on a few simple drug-money pick-ups in California. (Response, Doc. 32, Exhibit A, PageID 226; Response, Doc. 32, Exhibit B, PageID 234.) The alleged SDOH conspiracy covered a more expansive area, including multiple states, such as Ohio, Pennsylvania, Oklahoma, Georgia, and elsewhere. (SDOH Indictment, Doc. 3, PageID 39.) While the alleged SDOH conspiracy crossed multiple territories, the SDCA conspiracy was primarily confined to California. (Response, Doc. 32, Exhibit A, PageID 224–29; SDOH Indictment, Doc. 3, PageID 39.) Therefore, this last factor weighs in favor of the Government.

Because four of the five *Sinito* factors—time, coconspirators, overt acts, and geography—weigh in favor of two separate conspiracies, the Court finds that Count 5 of the SDCA Indictment and Count 1 of the SDOH Indictment do not concern the same offense, and there is no double jeopardy violation in the Government's prosecution of Count 1 of the SDOH Indictment. The Government is permitted to continue its prosecution of Lin with respect to that count.

### B. SDOH Counts 2-5

The traditional *Blockburger* "same evidence" test applies to Counts 2 through 5 of the SDOH Indictment because those counts, unlike Count 1, do not involve conspiracy charges. Because Counts 2–5 of the SDOH Indictment and Count 5 of the SDCA Indictment each "requires proof of a fact which the other does not"—namely the time and place of the concealment of money transactions—Counts 2 through 5 in the SDOH Indictment are not the same offense as Count 5 in the SDCA Indictment. Therefore, the prosecution of Counts 2–5 of the SDOH Indictment does not result in double jeopardy, and the Government may continue its prosecution of Lin with respect to those counts.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Yan Lin's motion to dismiss (Doc. 30) is **DENIED**.

**IT IS SO ORDERED.**

Date: 11/24/2026

Matthew R. Byrne
United States District Judge